UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| | ) | Case No. 25-04324 |
| HARLING, INC., | ) | |
| | ) | Honorable Jacqueline P. Cox |
| Debtor | ) | |
| | ) | Chapter 11 |

# FOURTH AMENDED PLAN OF REORGANIZATION FOR SMALL BUSINESS UNDER CHAPTER 11

## A. Description and History of the Debtor's Business

Harling, Inc. ("Debtor") is an Illinois corporation that provides masonry restoration services for its clientele. The Debtor filed its voluntary petition pursuant to Subchapter V of Chapter 11 of Title 11, U.S.C. on March 20, 2025 ("Case"). Robert P. Handler was thereafter appointed as Subchapter V trustee ("Trustee"). On March 25, 2025, the Court entered an order which fixed May 28, 2025, as the bar date for filing proofs of claim by non-governmental entities. The date for filing by the Debtor of its Subchapter V plan was originally set as June 23, 2025.

On April 14, 2025, the Debtor filed its schedules, statement of financial affairs and related documents. On April 15, 2025, the Debtor filed a motion for authority to use cash collateral and provide adequate protection to Byline Bank ("Byline"). On April 22, 2025, an interim order was entered granting the Debtor's motion authorizing the Debtor to use cash collateral and provide adequate protection to Byline. Interim orders continuing the authority to use cash collateral and provide adequate protection to Byline were entered periodically from May 21, 2025, through July 15, 2026. The next hearing date on the continued use of cash collateral is set for August 4, 2026.

The meeting of creditors was held on April 21, 2025, and concluded.

On July 8, 2025, an order was entered extending the deadline for the Debtor to file its plan to and including August 25, 2025. On August 25, 2025, the Debtor filed its plan and the status hearing has been continued from time to time. On November 11, 2025, the Debtor filed its first amended plan of reorganization. The order entered November 18, 2025, continuing the use of cash

collateral provided for the Debtor to file a second amended plan on or before December 5, 2025. The Debtor filed its second amended plan on December 5, 2025. On January 21, 2026, the Court entered an order and notice setting a hearing on confirmation of the second amended plan and dates for filing objections to confirmation and written acceptances or rejections of the plan. The Debtor failed to obtain the acceptance of any impaired class and, therefore, the second amended plan could not be confirmed. On June 26, 2026, the Debtor filed a third amended plan of reorganization. This is the Debtor's fourth amended plan of reorganization for small business under Chapter 11 ("Plan").

**B. Liquidation Analysis**

To confirm the Plan, the Court must find that all creditors who do not accept the Plan will receive at least as much under the Plan as such claim holders would receive in a Chapter 7 liquidation. A liquidation analysis is attached to the Plan as Exhibit A. The Debtor submits that all creditors will receive more money under the Plan than in a Chapter 7 liquidation.

**C. Ability to make future plan payments and operate without further reorganization**

The Debtor's Plan proposes to continue its business operations in order to generate income with which to pay creditors holding allowed secured claims the value of the collateral standing as security for the claims, plus interest, and a dividend to general unsecured creditors in the amount of five (5%) percent of the allowed claims. Attached as Exhibit B to the Plan are the Debtor's projections of income and expenses over the life of the Plan which discloses the available net income with which to fund the Plan. The financial projections show that the Debtor will have projected disposable income (as defined by §1191(d) of the Bankruptcy Code) for the period described in §1191(c)(2) in excess of $303,000. The final Plan payment is expected to be paid on the sixtieth (60th) month following the effective date of the Plan. Exhibit B shows the Debtor's projected income and expenses for the years 2026-2031.

**Article 1: Summary**

This Plan under Subchapter V of Chapter 11 of the Bankruptcy Code ("Code") proposes to pay creditors of the Debtor from cash on hand, cash flow projections and future income. The Plan provides for: one (1) class of secured claims; three (3) classes of general unsecured claims; one (1) class of priority claims, one (1) class of unclassified claims, and one (1) class of shareholder interests.

The one (1) class of secured claims consists of Byline who has a security interest in all personal property owned by the Debtor at the date of filing of the Case, plus any post-petition proceeds and products thereof, to the extent and priority of Byline's prepetition lien, but only to the extent of any diminution in value of its collateral.

On April 8, 2025, Byline filed two proofs of claim in the amounts of $741,212.92 and $218,646.76. Each claim was filed as a secured claim with the value thereof "TBD" relative to all personal property of the Debtor. At the date of filing of the Case, the Debtor believed the value of the collateral securing Byline's secured claim to be $24,947. However, since accounts receivable fluctuate, the Debtor and Byline have agreed that Byline will be paid $50,000, plus interest at the rate of nine (9%) percent per annum, over the life of the Plan. The difference between the claims filed by Byline and the amount of its secured claim will be treated as general, unsecured claims to be paid, pro rata, with other unsecured claims.

Kapitus Servicing, Inc. ("Kapitus") filed a proof of claim on May 28, 2025, in the amount of $266,436.37, all of which is claimed as secured. However, Kapitus claims the same collateral as Byline and since Byline's secured claim has priority over Kapitus, the Debtor intends to file an objection to the allowance of Kapitus' claim as a secured claim and to recast the claim as unsecured to be treated in the Plan along with other general, unsecured claims to be paid pro rata.

The one class of priority claims consists of the claim filed by Department of Treasury-Internal Revenue Service ("IRS"). On June 2, 2025 (Claim #14) and June 13, 2025 (Claim #15), IRS filed proofs of claim in the amount of $145,734.28, of which $135,110.47, was claimed as priority. Most of the claim was based upon estimates alleging that the Debtor failed to file appropriate tax returns. The Debtor filed quarterly tax returns (Forms 941) for the four quarters of 2024, and the first two quarters of 2025. On August 3, 2026, IRS amended Claim #15. The total amount claimed is $114,739.81, of which $74,898.85, is claimed as a priority. The Debtor believes that Claim #14 is a duplicate and will file an objection to disallow Claim #14. The priority portion of Claim #15 will be paid in full, with interest at 6.5% per annum, in monthly payments over five (5) years from the date of filing of the Case. The balance of the IRS claim will be treated as a general, unsecured claim to be paid, pro rata, with other unsecured claims.

The general unsecured claims will receive pro rata distributions over the life of the Plan. The Debtor estimates the total amount of non-priority, unsecured creditors holding allowed claims (either

filed or scheduled) is $2,278,775.83, including the unsecured claims of Byline and IRS. These non-priority, unsecured creditors will receive distributions which the proponent of the Plan has valued at approximately five ($.05) cents on the dollar. In addition, in the event the Debtor's annual net profit (after all operating expenses and Plan payments) exceeds $10,000, as of December 31 of each year during the term of the Plan, the Debtor will make additional payments, pro rata, to this Class of claimants in the amount of seventy-five percent (75%) of the annual net profit in excess of $10,000. The requirement to make the additional payments set forth above will commence one year from the Effective Date of the Plan and will continue each year for the term of the Plan at which time the additional payments will cease.

The Plan will also provide for payment of allowed administrative expense claims (class of unclassified claims). The administrative expense claims consist of the fees and expense reimbursement of the Trustee and Debtor's counsel to be determined by the Court after application for allowance of fees and expenses.

All creditors should refer to Articles 2 through 4 of this Plan for information regarding the precise treatment of their claim.

**Your rights may be affected. You should read these papers carefully and discuss them with your attorney, if you have one. (If you do not have an attorney, you may wish to consult one.)**

**Article 2: Classification of Claims and Interests**

**2.01 Class 1**

The claim of Byline to the extent allowed as a secured claim under §506 of the Code. On or about April 20, 2020, the Debtor executed a U.S. Small Business Administration note ("Note") and security agreement ("Security Agreement") with Byline in order to borrow the principal sum of $250,000. Also on or about April 20, 2020, the Debtor executed a U.S. Small Business Administration note ("Note") and security agreement ("Security Agreement") with Byline in order to borrow the principal sum of $1,050,000. The Security Agreements granted Byline a security interest in the Debtor's equipment, inventory, accounts, instruments, chattel paper and general intangibles. A UCC financing statement was recorded in the office of the Illinois Secretary of State in order to perfect Byline's security interest. The Plan provides for payment to Byline of $50,000, plus interest

at nine (9%) percent per annum, over a period of sixty (60) months, commencing thirty (30) days after the effective date of the Plan in monthly payments of $1,038.00.

The difference between the claims filed by Byline and the value of the secured claim will be treated as unsecured claims in Class 4.

**2.02 Class 2**

The claim of Kapitus. On or about September 10, 2024, the Debtor executed a forward purchasing agreement and security agreement in favor of Kapitus in the amount of $208,972, in order to purchase future receipts of the Debtor. This loan transaction is typically referred to as a merchant cash advance loan whereby the Debtor agreed to repay Kapitus over a term of approximately twenty-four months in weekly payments of $1,761 being debited from Debtor's bank account. Kapitus was given a security interest in the same assets pledged to Byline as collateral to secure the debt due Byline. Kapitus filed a UCC financing statement with the Illinois Secretary of State, but subsequent to the filing of Byline's UCC financing statement. Since the value of the collateral standing as security for the debt due Byline does not exceed the indebtedness due Byline, the Debtor submits that there is no collateral standing as security for the debt due Kapitus. Accordingly, Kapitus' claim will be treated as a general, unsecured claim to be treated as a non-priority, general unsecured claim to be paid pro rata with other general, unsecured claims in Class 4. The Debtor will file an objection to Kapitus' claim to recast the secured claim as an unsecured claim.

**2.03 Class 3**

The claim of IRS as a priority tax claim.

On June 2, 2025 (Claim #14) and June 13, 2025 (Claim #15), IRS filed proofs of claim in the amount of $145,734.28, of which $135,110.47, was claimed as priority. Most of the claim was based upon estimates alleging that the Debtor failed to file appropriate tax returns. The Debtor filed quarterly tax returns (Forms 941) for the four quarters of 2024, and the first two quarters of 2025. On August 3, 2026, IRS amended Claim #15. The total amount claimed is $114,739.81, of which $74,898.85, is claimed as a priority. The Debtor believes that Claim #14 is a duplicate and will file an objection to disallow Claim #14. The priority portion of Claim #15 will be paid in full, with interest at 6.5% per annum, in monthly payments over five (5) years from the date of filing of the Case. The balance of the IRS claim will be treated as a general, unsecured claim to be paid, pro rata, with other unsecured claims.

**2.04 Class 4**

This class consists of allowed, general unsecured claims under §502 of the Code. According to the Debtor's schedules and the proofs of claim filed herein, the Debtor believes that the total amount of unsecured claims in this class is $2,278,775.83. This class includes the unsecured portions of Byline's claims, the claim of Kapitus, the unsecured portion of the IRS claim and all other general, unsecured claims scheduled by the Debtor or filed claims. The Debtor reserves the right to file objections to the allowance of these claims, but for purposes of this Plan, the above figure will be used. These claims will be paid pro rata, without interest, a dividend in the amount of five (5%) percent of the allowed claims in monthly payments over a period of sixty (60) months commencing thirty (30) days after the effective date of the Plan. Once the priority claim of IRS in Class 3 is paid in full, the Debtor will increase the monthly payments to Class 4 creditors.
The monthly payment to be shared by this class, pro rata, is $1,278.78, for forty-two (42) months and $3,277.40 for eighteen (18) months. In addition, in the event the Debtor's annual net profit (after all operating expenses and Plan payments) exceeds $10,000, as of December 31 of each year during the term of the Plan, the Debtor will make additional payments, pro rata, to this Class of claimants in the amount of seventy-five percent (75%) of the annual net profit in excess of $10,000. The requirement to make the additional payments set forth above will commence one year from the Effective Date of the Plan and will continue each year for the term of the Plan at which time the additional payments will cease.

**2.05 Class 5**

Patrick Brenner ("Brenner") holds one hundred (100%) percent of the outstanding shareholder interests of the Debtor. Upon confirmation of the Plan, Brenner will continue to be vested with one hundred (100%) percent of the outstanding shareholder interests of the Debtor.

**Article 3: Treatment of Administrative Expense Claims, Priority Tax Claims and Quarterly and Court Fees**

**3.01 Unclassified Claims**

Under §1123(a)(1), administrative expense claims are not in classes. The administrative expense claims include the fees and expenses of Debtor's bankruptcy counsel and the Trustee, which will be awarded by the Court upon application for fees and reimbursement of expenses.

**3.02 Treatment of Administrative Claims**

Each holder of an administrative expense claim allowed under §503 of the Code will be paid in full. Subject to the amounts awarded as administrative expenses of Debtor's counsel and the Trustee, these administrative expense claims may be paid on the effective date of the Plan, by agreement of the parties, or over the life of the Plan pursuant to §1191(e).

**3.03 Priority tax claims**

The one class of priority claims consists of the amended proof of claim filed on August 3, 2026, by IRS in the amount of $114,739.81, of which $74,898.85, is claimed as priority. The priority portion of the claim will be paid in full, with interest at 6.5% per annum, in monthly payments over a period of five (5) years from the date of filing of the Case and the balance of the claim will be treated as an unsecured claim.

**3.04 Statutory fees**

There are no fees required to be paid under 28 U.S.C. §1930.

**Article 4: Treatment of Claims and Interests Under the Plan**

**4.01 Claims and Interests shall be treated as follows under the Plan:**

**Class 1-Secured Claim of Byline**

This class is impaired. Byline's secured claim in the amount of $50,000 will be paid, plus interest at nine (9%) percent per annum, over a period of sixty (60) months, commencing thirty (30) days after the effective date of the Plan in monthly payments of $1,038.00. Upon full payment of Byline's secured claim, Byline shall cause a termination statement to be filed with the Illinois Secretary of State releasing its lien on the Debtor's assets. The difference between the claims filed by Byline and the value of its secured claim will be treated as unsecured claims and paid, pro rata, with non-priority, general unsecured claims in Class 4.

**Class 2-Claim of Kapitus**

This class is impaired. As stated in Section 2.02 of the Plan, the Debtor believes there is no collateral standing as security for Kapitus' claim. The Debtor intends to file an objection to Kapitus' secured claim in the amount of $266,436.37, to recast that claim as unsecured. Kapitus' claim will be paid, pro rata, with non-priority, general unsecured claims in Class 4. Upon confirmation of the

Plan, Kapitus shall file a termination statement with the Illinois Secretary of State releasing its lien on the Debtor's assets.

**Class 3-Priority Claim of IRS**

This class is impaired. The priority claim in the amount of $74,898.85 will be paid in full, with interest at 6.5% per annum, in monthly payments over five (5) years from the date of filing of the Case, commencing thirty (30) days after the effective date of the Plan, in monthly payments of $1,998.62. The balance of the IRS claim will be treated as a general, unsecured claim to be paid, pro rata, with non-priority, general unsecured claims in Class 4.

**Class 4-Non-priority, General, Unsecured Claims**

This class is impaired. The allowed general, unsecured claims under §502 of the Bankruptcy Code shall be paid, pro rata, without interest, a dividend in the amount of five (5%) percent of the allowed claims in monthly payments over a period of sixty (60) months, commencing thirty (30) days after the effective date of the Plan. Once the priority claim of IRS in Class 3 is paid in full, the Debtor will increase the monthly payments to Class 4 creditors. The monthly payment to be shared, pro rata, is $1,278.78 for forty-two (42) months and $3,277.40 for eighteen (18) months. In addition, in the event the Debtor's annual net profit (after all operating expenses and Plan payments) exceeds $10,000, as of December 31 of each year during the term of the Plan, the Debtor will make additional payments, pro rata, to this Class of claimants in the amount of seventy-five percent (75%) of the annual net profit in excess of $10,000. The requirement to make the additional payments set forth above will commence one year from the Effective Date of the Plan and will continue each year for the term of the Plan at which time the additional payments will cease.

**Class 5-Shareholder Interest**

Patrick Brenner ("Brenner") holds one hundred (100%) percent of the outstanding shareholder interests of the Debtor. Upon confirmation of the Plan, Brenner will continue to be vested with one hundred (100%) percent of the outstanding shareholder interests of the Debtor.

## Article 5: Allowance and Disallowance of Claims

### 5.01 Disputed Claim

A *disputed claim* is a claim that has not been allowed or disallowed by a final non-appealable order and as to which either:

(i) a proof of claim has been filed or deemed filed, and the Debtor or another party in interest has filed an objection; or

(ii) no proof of claim has been filed, and the Debtor has scheduled such claim as disputed, contingent, or unliquidated.

### 5.02 Delay of Distribution on Disputed Claim

No distribution will be made on account of a disputed claim unless such claim is allowed by a final non-appealable order.

### 5.03 Settlement of Disputed Claims

The Debtor will have the power and authority to settle and compromise a disputed claim with Court approval and compliance with Rule 9019 of the Federal Rules of Bankruptcy Procedure.

## Article 6: Provisions for Executory Contracts and Unexpired Leases

Except for executory contracts and unexpired leases that have been assumed before the effective date of the Plan or under this section of the Plan, or that are the subject of a pending motion to assume, the Debtor will be conclusively deemed to have rejected all executory contracts and unexpired leases as of the date of filing of the Case. A proof of claim arising from the rejection of an executory contract or unexpired lease under this section must be filed no later than thirty (30) days after the date of the order confirming this Plan.

## Article 7: Means for Implementation of the Plan

The Debtor will retain all of its assets, subject to the applicable lien of Byline. The Debtor will continue operating its business affairs to generate the disposable income necessary to fund the Plan. The Plan will be implemented and funded by existing cash on hand at the effective date of the Plan and by future income earned by the Debtor.

**Article 8: General Provisions**

**8.01 Definitions and rules of construction**

The definitions and rules of construction set forth in §§101 and 102 of the Code shall apply when terms defined or construed in the Code are used in this Plan.

**8.02 Effective date**

The effective date of this Plan is the first business day following the date that is fourteen (14) days after the entry of the confirmation order. If, however, a stay of the confirmation order is in effect on that date, the effective date will be the first business day after the date on which the stay expires or is otherwise terminated.

**8.03 Severability**

If any provision in this Plan is determined to be unenforceable, the determination will in no way limit or affect the enforceability and operative effect of any other provision of this Plan.

**8.04 Binding effect**

The rights and obligations of any entity named or referred to in this Plan will be binding upon, and will inure to the benefit of, the successors or assigns of such entity.

**8.05 Captions**

The headings contained in this Plan are for convenience of reference only and do not affect the meaning or interpretation of this Plan.

**8.06 Controlling effect**

Unless a rule of law or procedure is supplied by federal law (including the Code or the Federal Rules of Bankruptcy Procedure), the laws of the State of Illinois govern this Plan and any agreements, documents, and instruments executed in connection with this Plan, except as otherwise provided in this Plan.

**8.07 Corporate governance**

The Debtor will comply with the requirements of §1123(a)(6) as necessary to this Plan.

**8.08 Management of the Debtor**

The sole shareholder, President and director of the Debtor is Patrick Brenner who will remain as sole shareholder, President and director of the Debtor and carry out all of the provisions of the confirmed Plan including making Plan distributions.

**8.09 Retention of Jurisdiction**

The Court shall retain jurisdiction after confirmation of the Plan to: (i) hear and determine applications for allowance of fees and expenses for professional persons; (ii) supervise the implementation of the Plan; (iii) hear and determine objections to claims; (iv) resolve disputes regarding the implementation of the Plan; (v) allow administrative claims; (vi) enter orders in further consummation of the Plan; (vii) approve modifications of the Plan upon proper motions; (viii) hear and determine any pending motions on the date of confirmation or commenced after confirmation; (ix) enforce terms of the Plan; and (x) hear and determine any and all matters brought before the Court after confirmation of the Plan.

**Article 9: Discharge**

If the Debtor's plan is confirmed under §1191(a), on the effective date of the Plan, the Debtor will be discharged from any debt that arose before confirmation of this Plan, to the extent specified in §1141(d)(1)(A) of the Code, except that the Debtor will not be discharged of any debt: (i) imposed by this Plan; or (ii) to the extent provided in §1141(d)(6).

If the Debtor's Plan is confirmed under §1191(b), confirmation of this Plan does not discharge any debt provided for in this Plan until the Court grants a discharge on completion of all payments due within the first three (3) years of this Plan, or as otherwise provided in §1192 of the Code. The Debtor will not be discharged from any debt: (i) on which the last payment is due after the first three (3) years of the Plan, or as otherwise provided in §1192; or (ii) excepted from discharge under §523(a) of the Code, except as provided in Rule 4007(c) of the Federal Rules of Bankruptcy Procedure.

**Article 10: Other Provisions**

1. Notwithstanding §1194 of the Code, all distributions required under the Plan shall be made by Patrick Brenner on behalf of the Debtor.

2. The Debtor will have the right to make any distributions to creditors earlier than required by the Plan, without penalty, and without increasing the amount due each class of claims.

3. In the event any distribution made to a claimant pursuant to the Plan remains unclaimed ninety (90) days after such distribution is made, pursuant to 11 U.S.C. §347, the Debtor will stop payment on the check and deposit the funds with the Clerk of the Court as unclaimed funds.

4. The payments to Classes 1, 2 and 4 shall be paid over sixty (60) months, commencing

thirty (30) days after the effective date of the Plan. The payments to Class 3 shall be paid over sixty (60) months from the date of filing of the Case, commencing thirty (30) days after the effective date of the Plan.

5. Upon full payment of the secured claim of Byline in Class 1, Byline shall release its lien on all property of the Debtor standing as collateral for the secured claim and file a termination statement with the Illinois Secretary of State.

6. Upon confirmation of the Plan, Kapitus shall release its lien on all property of the Debtor by filing a termination statement with the Illinois Secretary of State.

7. With respect to Class 1, if the Debtor defaults in making payments under the confirmed Plan after the effective date of the Plan, Byline may enforce all of its rights and remedies under non-bankruptcy law, provided that Byline must first provide notice to the Debtor and its counsel of the default and give the Debtor an opportunity to cure within fourteen (14) days of the notice. Notice of a default must be given either (a) by first class mail to the Debtor at its place of business and debtor's counsel at 53 West Jackson Blvd., Suite 860, Chicago, IL 60604, or (b) by email to the Debtor at jbrenner@harlinginc.com and his counsel at joel@jasbklaw.com, and also to the Subchapter V Trustee, Robert P. Handler at rhandler@com-rec.com. If the Debtor fails to timely cure the default, the creditor may immediately and without further order of the bankruptcy court enforce its rights and pursue all remedies under applicable law, but relief is limited to (a) the allowed secured claim provided for in the Plan, minus any payments made to the creditor under the Plan, and (b) recovery of collateral securing the claim.

8. With respect to Classes 2-4, if the Debtor defaults in making payments under the confirmed Plan after the effective date of the Plan, creditors in these Classes may enforce all of their rights and remedies under non-bankruptcy law, provided that any creditor doing so must first provide notice to the Debtor and his counsel of the default and give the Debtor an opportunity to cure within fourteen (14) days of the notice. Notice of a default must be given either (a) by first class mail to Debtor at its place of business and debtor's counsel at 53 West Jackson Blvd., Suite 860, Chicago, IL 60604, or (b) by email to the Debtor at jbrenner@harlinginc.com and his counsel at joel@jasbklaw.com, and also to the Subchapter V Trustee, Robert P. Handler at rhandler@com-rec.com. If the Debtor fails to timely cure the default, the creditor may immediately and without further order of the bankruptcy court enforce its rights and pursue all remedies under applicable law,

but relief is limited to the amount due under the Plan, minus any payments made to the creditor under the Plan.

Respectfully submitted,

Harling, Inc., Debtor

By: /s/ Joel A. Schechter
Its Attorney

Joel A. Schechter
Attorney No. 3122099
LAW OFFICES OF JOEL A. SCHECHTER
53 W. Jackson Blvd., Suite 860
Chicago, Illinois 60604
(312) 332-0267
joel@jasbklaw.com